IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| TAM DAVAGE and MARCELLA MONROE, | ) | |
| | ) | |
| Plaintiffs, | ) | Civ. No. 04-6321-HO |
| | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| CITY OF EUGENE, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This case involves the execution of a search warrant at properties located at 464 West Adams Street, 909 West 5th Avenue and 923 West 5th Avenue in Eugene, Oregon on October 17, 2002. Plaintiffs allege claims for unlawful search (lack of probable cause), unlawful search (judicial deception), excessive force, excessive force related to destruction of property, and unreasonable seizure, pursuant to 42 U.S.C. § 1983. Plaintiffs also allege state law claims for false imprisonment, assault,

battery, and intentional infliction of emotional distress.  During the latest round of summary judgment motions, plaintiffs added a tenth claim asserting conspiracy.

BACKGROUND

In August 2002, defendant Karol Herbert, a law enforcement officer with the Eugene Police Department, learned that documents concerning plaintiff Marcella Monroe were found during a raid on a marijuana grow operation in Portland, Oregon.  The documents include a cashiers check to Roman McCloskey, the suspect in the Portland grow.  Herbert also learned that a car registered to plaintiff Tam Davage was seen at the site of the Portland grow during the investigation, about nine or ten months prior to the raid.  Herbert began to investigate Monroe and Davage after receiving this information, which soon centered on the three closely linked Eugene properties noted above.

Herbert compiled the information she obtained during the investigation into an affidavit in support of a warrant application.  Lane County Assistant District Attorney David Montgomery approved the affidavit.  Lane County Circuit Court Judge Eveleen Henry Herbert issued a warrant based on the affidavit from Herbert.

In the predawn hours of October 17, 2002, more than 50 police officers using a light armored vehicle executed the search warrant

at the three properties owned by plaintiffs.  Police officers from
Eugene, Springfield, and Portland executed the warrant.  Plaintiffs
allege that the officers engaged in a "no knock" paramilitary style
raid on the homes without probable cause, detonated three
concussion grenades, and smashed in doors.

Plaintiff Monroe alleges she was thrown to the floor where she
hit her head on a metal doorsill.  Plaintiff Monroe further alleges
that an officer stood on her neck while she was zip-tie cuffed, and
that officers covered her head with a black hood.  Plaintiff Davage
alleges he was marched at gun point with his hands tied.
Plaintiffs allege the police found no evidence that plaintiffs had
committed any crime as a result of the search, but issued two
citations for felony manufacturing of controlled substances.  The
charges were later dismissed.


DISCUSSION


1.   Motion for Summary Judgment by Defendant Richard Lewis (#89)

Defendant Richard Lewis is a Captain with the Springfield
Police Department and a SWAT commander.  Pursuant to the Oregon
Tort Claims Acts, which provides that the public body (The City of
Springfield) is the sole responsible party, defendant Lewis is

entitled to summary judgment with respect to the state law claims. See ORS § 30.265.

Defendant contends that he did not enter any of the buildings, did not come into contact with any of the occupants, did not submit the affidavit in support of the warrant, did not plan the search nor authorize anyone to seek the warrant, and that he played no part in the investigation that led to the warrant.

In response, plaintiff argues that Lewis did authorize the SWAT team to enter plaintiffs' property (923 West 5th Avenue) and deploy concussion grenades, that he trained and supervised other defendants in the use of hoods, and that he allowed Springfield SWAT to participate without identifying themselves.

As noted in the previous motions for summary judgment, there is no evidence that the flashbangs caused any damage, or that the 923 West 5th Avenue house was occupied. Defendant Lewis is entitled to summary judgment as to the excessive force claim (Third Claim), but the record needs further development regarding SWAT's role in "causing unnecessary destruction to the doors, glass, moldings, walls and plaster" of the 923 West 5th Avenue building (Fourth Claim). Plaintiffs fail to cite any evidence that Lewis participated in the arrest of plaintiffs or supervised an arresting officer. The motion for summary judgment as to the unreasonable seizure claim (Fifth Claim) is granted.

As to the unlawful search claims (First and Second Claims), there is some evidence that Lewis was a leader of the SWAT team that executed the warrant at 923 West 5th Avenue. Accordingly, he had some responsibility for ensuring the warrant was not defective in some way. See Ramirez v. Butte-Silver Bow County, 298 F.3d 1022, 1027 (9th Cir. 2002). However, plaintiff relies on the allegations alone to show that the warrant and affidavit in support were so flawed that a reasonable officer would have concluded that the warrant was defective. Plaintiff fails to identify any facial defect. Plaintiff presents no evidence of obvious defects or of Lewis' knowledge that alleged false statements supported the warrant. Thus, defendant Lewis is entitled to summary judgment as to the first and second claims for relief. See id. (The officers who lead the team that executes a warrant must actually read the warrant and satisfy themselves that they understand its scope and limitations, and that it is not defective in some obvious way).[1] In short, plaintiff fails to present issues of fact even as to supervisor liability with respect to Lewis' leadership responsibilities in directing SWAT to search the 923 West 5th property, except for the destruction of property claim.

---

[1]Plaintiffs attempt to assign liability based officers' alleged failure to identify themselves. However, it is undisputed that the 923 West 5th Avenue property was unoccupied. Thus, there was no one for the officers to identify themselves to.

2.    Motion for Summary Judgment by Defendant Jennifer Bills (#106)

As noted above, ORS § 30.265 bars the state law claims against the individual defendant Bills.

Bills contends that she was the team leader of the crisis negotiation team and that her involvement was limited to standing by outside of the buildings and properties. Defendant Bills asserts that she left once the SWAT teams had cleared the buildings. Defendant Bills also claims that she did not participate in the investigation which led to the search warrant, did not prepare or submit an affidavit in support of the warrant, and did not plan the search operation. Accordingly, Bills argues that she is entitled to qualified immunity under Ramirez. Moreover, Bills contends it is undisputed that she did not use any force against the plaintiffs or their property and that she did not arrest or authorize the arrest of plaintiffs.

Plaintiffs contend that Bills supervised the SWAT team members that

> intimidatingly arrived at plaintiff's residences in a large National Guard military Light Armored Vehicle ("LAV") ... which positioned itself in the front yard of plaintiffs' 464 Adams Street residence so that it terrifyingly appeared to plaintiff Davage that the tank-like vehicle was threatening to ram his house.... Under the supervision of defendant Bills, the SWAT team members "hailed" from the LAV. All of which caused plaintiff Davage to undergo treatment for Post Traumatic Stress Disorder and emotional distress as outlined in plaintiff's First Amended Complaint."

Plaintiff's Response to Concise Statement of Material Facts (#292) at ¶ 8. Plaintiff also states that the LAV damaged the driveway. Plaintiffs do not cite record support for these assertions. Citing to the affidavit of Bills, defendants reply that Bills did not supervise the Eugene SWAT team who entered the property. Defendant Thomas Turner reveals that he was the SWAT team Commander. Defendant Bills' motion for summary judgment is granted.

3.    Motion for Summary Judgment by Defendant Eric Klinko (#141)

       Defendant Klinko also seeks summary judgment as to all claims against him. Klinko argues that he played a minimal role in the investigation leading to the warrant (consisting of listening to voices coming from an outbuilding at 464 West Adams), that he did not submit the affidavit in support of the warrant, and that he did not plan the search. Klinko argues that his only involvement in the search was to do a flyover, provide information to SWAT and enter one of the buildings with one of the entry teams. Klinko further argues that he did not use any force against the plaintiffs, that he only reviewed a book about GPS with plaintiff Monroe, and that he did not damage any property. Finally, Klinko contends that he did not arrests the plaintiffs. Moreover, Klinko argues he is entitled to summary judgment on the state law claims pursuant to the Oregon Tort Claims Act.

Plaintiffs contend that Defendant Klinko's observations of "voices" from an outbuilding provide no indicia of probable cause to believe plaintiffs were growing marijuana.  Plaintiffs further contend that Klinko did not smell or see marijuana, but that this fact is omitted from his "observations" reported to defendant Herbert.   In addition, plaintiffs contend that Klinko knew or reasonably should have known that his "observation" would be used by defendant Herbert to prepare a search warrant affidavit.

Plaintiffs also argue that Klinko omitted or recklessly disregarded observations via the "flyover" that 909 & 923 W. Fifth Avenue were under construction, and had numerous potted plants in the yard between the two residences.  Plaintiffs also contend that Klinko is responsible for involving SWAT in the execution of the search warrant.   Finally, plaintiffs contend that Klinko is an arresting officer.  See Plaintiffs' Exhibits 29, 30 and 31.

Plaintiffs only reference the small observations offered by Klinko, without addressing if such observations were in the warrant.  Plaintiffs then jump to the conclusion that the observations alone or collectively lacked probable cause without discussing, in the context of this motion, what is in the warrant.

The aerial photographs and the hearing of voices did not require Klinko to find that no probable cause existed for a warrant he did not apply for.  Moreover, Klinko informed defendant Herbert that he did not smell or see marijuana.  Klinko did not engage in

"judicial deception."  See Supplemental Affidavit of Eric Klinko (#317).

Klinko's observations do not negate the fact that other officers on different dates smelled marijuana, that unusually large amounts of power had been used at the subject locations, that humming noises consistent with equipment used to grow marijuana were heard, and that conditions consistent with "pin-hole" camera surveillance equipment were present at the site.  The warrant application included this information.  This information along with the stated experience of the applying officer that such observations (along with others) are consistent with a grow operation is not obviously deficient.  See Defendant's Exhibit 101 (#109).

Plaintiffs offer no evidence that Klinko assisted in the warrant application and thus how he engaged in "judicial deception."  Defendant Klinko is entitled to qualified immunity as noted in Ramirez.  See Ramirez, 298 F.3d at 1028 (9th Cir. 2002) (Line officers do not have to actually read or even see the warrant; they may accept the word of their superiors that they have a warrant and that it is valid).

Plaintiff does cite evidence for the proposition that Klinko involved SWAT, however, the deposition testimony cited only reveals that Herbert did not know who made the final decision to involve SWAT. Excerpt of Deposition of Karol Herbert (attached to #318 as

exhibit 1) at p 158.   Klinko states in his interrogatory that it was defendant Turner who made the decision.   Ex. 102 (attached to #318).   Moreover, plaintiff does not demonstrate supervisory authority over SWAT for any alleged damage it may have caused. Finally, plaintiff misinterprets the notation "AO" on the arrest reports as indicating that Klinko made the arrests.   However, Klinko notes that the term means assisting officer.   Plaintiffs have not produced any evidence that Klinko made the arrest for purposes of the unreasonable seizure claim.

Plaintiffs fail to address each claim in their memo and the factual issues they do assert to exist fail to demonstrate a material issue of fact on most of the claims.   However, Klinko was present at 464 Adams during the arrest and detention of plaintiffs. Plaintiffs don't address liability for presence only, but the Ninth Circuit has stated summary judgment is inappropriate in the case where officers admit to having been inside the premises during the execution of a warrant.   See Liston v. County of Riverside, 120 F.3d 965, 981 (9th Cir. 1997) (All of the officers who admit to having been inside the Saddlecreek premises during the execution of the warrant were participants in the detention of the Listons, not merely those officers who used force to handcuff Jim Liston.). Accordingly,  Defendant Klinko's motion for summary judgment is granted as to all claims except the excessive force claim on the

basis of his motion.[2]  As will be discussed below with respect to the arresting officer (Herbert), there was probable cause to arrest plaintiff and thus the Fifth Claim, unreasonable seizure, will be dismissed and Klinko is entitled to summary judgment on that claim.

4.  Motion for Summary Judgment by Defendant Brian Humphreys (#146)

Again summary judgment is appropriate as to the state law claims under the Oregon Tort claims Act.

Defendant Humphreys states that he played no part in the planning of the execution of the warrant and that his role was limited to entering the residence at 909 West 5th Avenue.  Humphreys also states that he did not submit the affidavit in support of the warrant or prepare it.  Humphreys further states that he did not contact any occupants of the buildings.  Humphreys also contends that he did not cause any of the alleged damage at the 909 West 5th Avenue building.

Plaintiffs argue that there are material issues of fact concerning Humphreys because he

_____

[2]As will be discussed below, plaintiff Monroe's testimony that she was thrown to the ground and had her neck stepped on, had multiple assault weapons pointed at her, was forced to remain partially nude in cold conditions, and was placed in excessively tight handcuffs for four hours could amount to excessive force under the circumstances.  The court declines to find qualified immunity given the factual issues regarding the reasonableness of the lengthy detention.  In addition, as will be detailed below, the conspiracy claim lacks merit.

is the infamous source of a report claiming on October 17, 2002, he found marijuana in a "shop" vacuum. Defense counsel concedes there is no marijuana found in a "shop" vacuum to be introduced in the case.

Plaintiffs contend that Humphreys violated the Constitution by destroying evidence. Plaintiffs also argue that Humphreys mischaracterized other evidence in "furtherance of lust for forfeiture proceeds." Plaintiff claims exhibit 43 (a picture of a man's hand grasping what appears to be a vent tube or some other form of ducting) proves the destruction. In addition, plaintiffs again rely on the "AO" notation to demonstrate participation in the arrest.

Defendants have not conceded there was no marijuana in the vacuum. An OSP forensic test confirmed that a substance found in the vacuum was marijuana. The evidence was destroyed at the District Attorney's direction after the decision was made not to prosecute. Plaintiffs provide no evidence that Humphreys destroyed the evidence. Moreover, since plaintiffs were not prosecuted, destruction of evidence did not cause a constitutional deprivation.

Plaintiffs' other alleged evidence of destruction of property is nonsensical and is evidence of nothing in particular even if admissible and authenticated.

As to whether Humphreys was an arresting officer, plaintiffs do not demonstrate that Humphreys was ever present in the building where the arrest took place. The motion for summary judgment is granted.

5.   Motion for Summary Judgment by Defendant City of Springfield (#154)

The City of Springfield argues that none of the Springfield law enforcement officers participated in submitting or preparing the affidavit in support of the warrant, but that defendant Herbert of the Eugene Police Department submitted the affidavit and obtained the search warrant.  The City also argues that there can be no municipal liability with regard to the federal claims.

Congress did not intend local governments to be held liable under section 1983 unless action pursuant to official government policy of some nature caused a constitutional tort.  Monell v. New York City Dept. of Social Services, 436 U.S. 658, 691 (1978).  A local government may be responsible for a single decision by government policymakers under appropriate circumstances.  Where a decision to adopt a particular course of action is properly made by that government's authorized decision makers, it represents an act of official government "policy" as that term is commonly understood.  Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986).  Where action is directed by those who establish governmental policy, the local government is equally responsible whether that action is to be taken only once or to be taken repeatedly.  See, id.  However, not every decision by governmental officers automatically subjects the government to section 1983 liability.  Government liability attaches only where the decision

maker possesses final authority to establish government policy with
respect to the action ordered.  <u>Id</u>.  The fact that a particular
official, even a policymaking official, has discretion in the
exercise of particular functions does not, without more, give rise
to government liability based on an exercise of that discretion.
The official must also be responsible for establishing final
government policy respecting such activity before the County can be
held liable.  <u>See</u> <u>id</u>. at 482-83.

> As with other questions of state law relevant to the
> application of federal law, the identification of those
> officials whose decisions represent the official policy
> of the local governmental unit is itself a legal question
> to be resolved by the trial judge before the case is
> submitted to the jury.  Reviewing the relevant legal
> materials, including state and local positive law, as
> well as "'custom or usage' having the force of law,"
> <u>Praprotnik</u>, <u>supra</u>, at 124, n. 1, 108 S.Ct., at 924, n. 1,
> the trial judge must identify those officials or
> governmental bodies who speak with final policymaking
> authority for the local governmental actor concerning the
> action alleged to have caused the particular
> constitutional or statutory violation at issue. Once
> those officials who have the power to make official
> policy on a particular issue have been identified, it is
> for the jury to determine whether their decisions have
> caused the deprivation of rights at issue by policies
> which affirmatively command that it occur, see <u>Monell</u>,
> 436 U.S., at 661, n. 2, 98 S.Ct., at 2020, n. 2, or by
> acquiescence in a longstanding practice or custom which
> constitutes the "standard operating procedure" of the
> local governmental entity.  <u>See</u> <u>Pembaur</u>, <u>supra</u>, at
> 485-487, 106 S.Ct., at 1301-1302 (WHITE, J, concurring)."

<u>Jett v. Dallas Independent School Dist.</u>, 491 U.S. 701, 737 (1989).

Summary judgment is appropriate as to the first and second
claims for relief because there is no evidence that Springfield has
any policy that impacted the investigation to obtain and the

obtaining of the warrant.   None of the individual Springfield defendants played a role in that process.

Plaintiffs argue there are issues of fact because:

First, Defendant City has a custom of not supervising its officers, who may defectively investigate a case or verify the accuracy of statements made in affidavits before submitting them to a magistrate for issuance of a warrant. Further, the Defendant City of Springfield fails to supervise its officers pursuant to an Interagency Narcotics Enforcement Team Agreement. [Affidavit of Ernest Warren, Jr., and Master of Exhibits in Support of Plaintiffs' Responses to Defendants' Motions for Summary Judgment ("Plaintiffs'") Exhibit 3]. The INET Agreement is an official policy that allows officers to make unsupervised violations of the Fourth Amendment. Moreover, defendant City of Springfield's participation (ratification & adoption) of the INET agreement, shows its (and its officers') manifestation of its intent to carry out a conspiracy to violate plaintiffs' Fourth Amendment rights including judicial deception, lack of probable cause and use of excessive force which are material facts alleged in this plaintiffs' claims for relief.

Second, the City has a custom allowing its SWAT officers to mask their identities and not identify who arrested plaintiffs, that is to hide the perpetrators of excessive force and humiliation during arrests. (Plaintiffs' Exhibit 4).

Third, defendant trains and supervises its officers to not identify themselves or hide behind a mask, particularly when arrestees ask officers to identify themselves as plaintiffs did.

Fourth, Defendant City of Springfield gave Defendant Herbert through the INET agreement "final policy making authority" and unfettered and unsupervised discretion to investigate plaintiffs.

Fifth, defendant failed to, or superficially investigated misconduct by its officers in this case, including judicial deception, excessive force, and fabrication. Defendant has failed to produce any investigation reports that looked for police misconduct.

Sixth, defendant, through its participation in INET with Lt. Tom Turner as INET SWAT Commander, trained, issued and supervised its SWAT officers to use illegal military-issued black cloth hoods to be placed over the heads of arrestees.

The INET agreement does not grant Springfield decision making authority to an entity or person not employed by the City. The INET agreement itself demonstrates no violation of plaintiff's rights.

Exhibit 4 (asserted to demonstrate issues of fact that the City has a policy of allowing officers to mask their identity) is a Wikipedia entry for "Balaclava" and is inadmissible and again a nonsensical attempt to create issues of fact. Plaintiffs otherwise fail to offer evidence to document such a custom or policy of hiding identity in violation of plaintiffs' constitutional rights. The only Springfield SWAT member left in this litigation, defendant Lewis, did not wear a Balaclava and wore an identification badge during the search.

Plaintiffs' contention that the City failed to investigate misconduct is unsupported by citation to any evidence.

Finally, there is no evidence that any individual Springfield defendant was trained to use hoods or that they in fact used hoods in this case.

Accordingly, the motion for summary judgment is granted as to the federal claims against the City of Springfield.

The City also moves to dismiss the state law claims contending that it did not receive proper notice.  Plaintiffs contend that notice to the Police Chief is sufficient for purposes of this case.[3]  However, plaintiffs fail to present evidence that notice was ever given to a statutorily designated official within the designated time period.  ORS § 30.275(5)(b) requires notice be given "to the public body at its principal administrative office, to any member of the governing body of the public body, or to an attorney designated by the governing body as its general counsel."

The evidence provided by defendant indicates that notice was addressed to the "Springfield Police Department."  There is no evidence that the Police Department administers tort claims on behalf of the City.  Even assuming the notice made it to the Police Chief, there is no evidence that he is a member of the governing body of the City.  The City Charter provides that the City Counsel is the governing body.  Although defense counsel eventually received the complaint, there is no evidence it was timely received.

Accordingly, the motion for summary judgment is granted.


6.    Motion for Summary Judgement by Defendant Dan Long (#159)

---

[3]Plaintiffs alternatively contend that notice to the Chief at least resulted in the proper official eventually getting notice. Plaintiffs provide no evidence that the proper official received actual notice.

Long argues that his only involvement prior to the warrant was smelling marijuana near the 464 Adams address and informing Herbert of the observation.    Long contends that he did not prepare the affidavit in support of the warrant and did not assist in obtaining the warrant.    Long also states that he did not assist in the planning of the execution of the search warrant.    Long relates that his role during the search was first to hold traffic at the scene while the buildings were cleared, get his SWAT gear, and assist in documenting evidence in the shed located behind 464 Adams Street. Long states that he was in the 464 Adams Street house for a period of time where he saw residents, but did not speak to or touch them.

Plaintiffs respond that smelling marijuana without further investigation and then relaying that information to defendant Herbert amounts to "judicial deception."[4]  Plaintiffs also claim that Long is listed as "AO" and therefore an arresting officer.  As noted above, "AO" does not mean an arresting officer.  Plaintiffs fail to produce evidence showing that Long was either present during the alleged excessive force in which plaintiff Monroe was thrown to the ground or during the alleged unreasonable detention.

Summary judgment is granted as to the unlawful search (lack of probable cause) and unlawful search (judicial deception) claims as

---

[4]Plaintiffs also note that neighbors were lawfully growing marijuana (based on evidence of a house owner's registration in the medical marijuana program), but that defendants failed to investigate that.

well as the excessive force claims.   Summary judgment is also granted as to the unreasonable seizure claim (Fifth Claim) because, as discussed below, there was probable cause to make an arrest. Moreover, pursuant to the Oregon Tort Claims Act, summary judgment is granted as to all state law claims.

## 7.   Motion for Summary Judgment by Defendant Casey Froehlich (#165)

Defendant Froehlich moves for summary judgment as to all claims and plaintiffs only response to the motion is submission of a response to the concise statement of facts in which plaintiffs simply admit some facts and deny others without citing any supporting materials.   Accordingly, the motion is granted.[5]

## 8.   Motion for Summary Judgment by Defendant Lee Thoming (#170)

As noted previously, summary judgment is appropriate as to the state law claims pursuant the Oregon Tort claims act.

Thoming argues that he was not involved in the investigation leading to the warrant except to take the initial call from the Portland Police Department regarding potential marijuana grow information and to forward the information to INET officers.

_____

[5]Froehclich's affidavit and response to interrogatories establishes no contact with plaintiffs or destruction of property on his part.

Thoming contends he was not even present at the search itself and was not involved in its planning.

Plaintiff argues that Thoming was the INET Unit Supervisor and that he authorized the INET to investigate the plaintiffs. Plaintiffs further contend that the search warrant is considered an INET warrant and that Thoming supervised the INET in that regard. Plaintiffs also claim he is listed as an arresting officer and "on-site" supervisor despite not having been present.

While there is some evidence of supervisory responsibility of the Eugene Police Department and INET, See, e.g., Exhibit 56 (attached to #261), there is no evidence that Thoming authorized the investigation by Herbert. Thoming only authorized INET to assist. Moreover, the investigation was a Rapid Deployment Unit (RDU) investigation, conducted by Karol Herbert, as a member of the RDU. Because Thoming was not present at the scene, there can be no dispute that he was not involved in the arrest or that he was an on-site supervisor. Plaintiffs fail to present any evidence of how the minimal evidence of some supervisory authority with respect to INET violated their rights. Plaintiffs offer no evidence that the direction to assist resulted in the violations alleged even assuming some INET officers engaged in violations. Plaintiffs do not show how the authorization to assist set in motion the acts that violated their rights, or how Thoming should have known such would occur. There is no evidence that Thoming led any team

executing the warrant.  Cf. Motley v. Parks, 432 F3d 1072 (9th Cir. 2004) (a supervisor can be liable for acts he should have known would occur and team leaders may not simply assume warrant authorizes search and seizure).

Plaintiffs also contend that Thoming is liable for allowing arresting officers to not identify themselves.  Even assuming this is a constitutional violation, plaintiffs offer no evidence that arresting officers were not identified or, even if such did occur, how Thoming authorized that failure. The motion for summary judgment is granted.


9.   Motion for Summary Judgment by Defendant Kevin McCormick (#174)

This particular motion demonstrates well that much of what plaintiffs are attempting to do with this civil case is establish that they are not criminals and that there is insufficient evidence to convict.  But the issue here is not interpreting the evidence to determine criminal guilt or lack of guilt.

Plaintiffs  explain the innocuous nature of some of the evidence seized and explain that they were really engaged in making jewelry or gardening, etc.  Plaintiffs also assert violations of the Sixth Amendment right to counsel, but this has no bearing on their civil case as no claim for violation of the Sixth Amendment has been asserted nor is such a violation actionable civilly.

21 - ORDER

Defendant McCormick moves for summary judgment contending that he was assigned to search as a member of the INET and to take video recordings of the interior of the 909 West 5th Avenue property. He asserts he was not involved in the investigation which preceded the execution of the warrant, and that he did not prepare the affidavit in support of the warrant or assist in obtaining the warrant. McCormick also asserts that he did not use any kind of force against any person or property. Finally, McCormick asserts that he did not arrest plaintiffs.

Plaintiffs have stated in depositions that when plaintiff Monroe invoked her right to counsel while plaintiffs were handcuffed and detained, that defendant McCormick yelled at plaintiffs, "do you think we're jack booted thugs?" Plaintiffs also assert destruction of evidence and "harassing" conduct. Plaintiffs then assert liability based on "speculating" on the usage of various items found at the properties. Plaintiffs also explain that there was no evidence of wrongdoing and offer legal uses for the items found. Importantly, however, plaintiffs state that McCormick yelled at, intimidated, and detained plaintiff Monroe.

While McCormick denies yelling and screaming at plaintiffs and his alleged actions in and of themselves are not enough to support a Fourth Amendment claim, the allegations do show his participation in the detention of plaintiffs and presence during the alleged

excessive force.  Accordingly, plaintiff's Excessive force claim (Third Claim for relief) should go forward at this point.  See Liston 120 F.3d at 981 (9th Cir. 1997).  There is an issue of fact as to whether McCormick failed to prevent violations of plaintiffs' rights when, for instance, Monroe was thrown to the ground and stepped on.  However, there is no evidence of destruction of evidence, judicial deception, destruction of property, etc. Additionally, McCormick is entitled to summary judgment on the state law claims pursuant to the Oregon Tort Claims Act. Accordingly, summary judgment is granted on Claims One, Two, Four, and Six through Nine.  As will be discussed, the unreasonable seizure claim should be dismissed because there was probable cause to make an arrest and summary judgment is thus appropriate on the Fifth Claim.


## 10.  Motion for Summary Judgment by Defendant Thomas Turner (#178)

Turner asserts that he did not enter any of the properties during the search and that he did not prepare the affidavit in support of the search warrant.  However, plaintiffs contend that:

    a. He commanded Defendant Klinko to scout the location;
    b. He reviewed aerial photographs taken by Defendant
    Klinko;
    c. He authorized SWAT team assistance;
    d. He briefed SWAT supervisors;
    e. He requested the Light Armored "tank like" Vehicle;
    f. He authorized, supervised and trained other defendants
    in the use of hoods; and,
    g. He authorized SWAT to deploy a "dynamic entry" when
    defendants admittedly knew there was no grow operation.

Plaintiffs further contend that Turner misrepresented that plaintiff Monroe had a prior weapons charge and that a grow operation was at the site. Plaintiffs also claim he authorized defendants to not identify themselves and did nothing to determine that the search warrant was supported by probable cause.

Tuner's leadership role with respect to SWAT members does put a greater responsibility on him with respect to

> ensuring that they have lawful authority for their actions. A key aspect of this responsibility is making sure that they have a proper warrant that in fact authorizes the search and seizure they are about to conduct. The leaders of the expedition may not simply assume that the warrant authorizes the search and seizure. Rather, they must actually read the warrant and satisfy themselves that they understand its scope and limitations, and that it is not defective in some obvious way.

Ramirez, 298 F.3d at 1027. However, plaintiffs do not point to any obvious defects in the warrant.

While plaintiff does point to evidence that a hood was placed on plaintiff Monroe, plaintiffs do not point to evidence showing that Turner authorized this or evidence regarding training in the use of hoods. Nor do plaintiffs present authority for what training would be constitutionally defective regarding hoods.

Plaintiffs' interpretation of the evidence is that there was no grow operation, however, that does not mean that Turner violated their rights by concluding otherwise based on the information in the warrant. Deployment of SWAT in and of itself does not amount to a constitutional violation unless plaintiff can point to some

24 - ORDER

evidence that Turner directed the use of excessive force or a search without probable cause.  Given the information in the warrant, Turner is at least entitled to qualified immunity regarding the decision to use SWAT.

Plaintiffs do note an apparent error in Turner's tactical dispatch report regarding attributing a weapons charge to plaintiff Monroe rather than Elizabeth Redetske, but that does not amount to a constitutional violation.  The information still pertained to the appropriate course of action to take with respect to execution of the search because both Monroe and Redetske were believed to be at the site before the search took place and in fact both were there. Additionally, plaintiffs point to no evidence that Turner directed anyone to hide their identity.  In short, plaintiffs fail to present any evidence that Turner directed any actions that resulted in constitutional violations even assuming any actions did so occur.

Defendant Turner's motion for summary judgment is granted.


11.  Motion for Summary Judgment by Defendant Jerry Webber (#189)

Webber maintains that he had no involvement in obtaining the warrant or the investigation leading to seeking a warrant and that he did not plan the search operation.  Webber notes that his role in the search consisted of accompanying the Eugene SWAT team in order to secure the 464 Adams Street residence.  He entered the

main residence and the shed and assisted in detaining a female occupant. Webber also states that the only physical contact he had was to secure Monroe's legs in the shed because he claims she was resisting and kicking her legs. Webber states that once Monroe was taken into the main residence he left the scene. This creates issues of facts, despite the fact that his actions alone may not constitute excessive force, because it shows his presence during the time of the alleged force.

Summary judgment is granted on the unreasonable search claims (Claims One and Two), the excessive force claim related to destruction of property, and the state law claims based on the Oregon Tort Claims Act. Summary judgment is denied as to the excessive force claim (Claim Three). Because there was probable cause to make an arrest, as described below, summary judgment is granted as to the Fifth Claim.


12. Motion for Summary Judgment by Defendant Lane County (#196)

Defendant Lane County contends that none of the individual Lane County defendants violated plaintiffs constitutional rights and thus it cannot be liable. However, a review of the case reveals that there are the following named individual Lane County defendants in this case: Jan Clements, Clifton Harrold, Ken Simpson, James Jorgenson, Greg Jonnes, Jonathan Bock, Chris Doyle, Aly House, Gordon Gill, Melinda Rauch, and Does 1-60 possibly. Of

those defendants, the docket indicates that all but Simpson and Harrold no longer are employed by the county.  Harrold has filed his own motion for summary judgment which will be addressed below, but as of this date, Simpson has not sought summary judgment. Thus, Lane County's contention that it cannot be liable based on a lack of liability by the individuals cannot be determined at this point and summary judgment is denied on this basis.

Lane County also argues that there is no policy or custom, or practice of violating Fourth Amendment rights that would support plaintiffs' federal claims against it.

As noted above, Congress did not intend local governments to be held liable under section 1983 unless action pursuant to official government policy of some nature caused a constitutional tort. Monell v. New York City Dept. of Social Services, 436 U.S. 658, 691 (1978).  Plaintiffs contend that Lane County has a policy of:

(1) not supervising its officers who may defectively investigate a case or verify the accuracy of statements made in affidavits before submitting them to a magistrate for issuance of a warrant, failing to supervise its officers pursuant to an INET Agreement, and  allowing officers to make unsupervised violations of the Fourth Amendment pursuant to the INET agreement;

(2) allowing its SWAT officers to mask their identities and

not identify who arrested plaintiffs, in order to hide the perpetrators of excessive force and humiliation during arrests; and

(3) allowing its SWAT officers to use illegal military-issued black cloth hoods to be placed over the heads of arrestees.

Plaintiffs also argue that Lane County gave defendant Herbert, through the INET agreement, "final policy making authority" and unfettered and unsupervised discretion to investigate plaintiffs, and that it failed to investigate misconduct by its officers in this case, which includes judicial deception, excessive force, and fabrication. Plaintiffs also contend that Lane County commingles funds in violation of Article XV § 10(7) of the Oregon Constitution and thus created an illegal incentive to violate the Fourth Amendment.

Generally, plaintiffs only offer conclusions and don't cite support in the record. Plaintiffs cite the INET agreement, but offer no explanation as to how it demonstrates a policy violative of the Fourth Amendment and a brief review of the document does not reveal any such policy. Also there is no evidence that any Lane County defendant prepared or submitted the affidavit such that a Lane County policy could have been involved with respect to the lack of probable cause or judicial deception claims.

As to the "masked identity" policy, plaintiffs again rely on the Wikipedia entry regarding balaclavas. Beside being inadmissable, the document does not provide any evidence of such a

policy.  The only evidence in the record from a Lane County SWAT member is that he was not trained to mask his identity, that he did nothing to conceal himself and that he wore a badge identifying himself as a police officer during the search.  See Supplemental Affidavit of Clifton Harrold (#342).

Plaintiffs' assertion that Lane County gave Herbert policymaking authority is not supported by the INET agreement.  In addition, Herbert is an employee of the City of Eugene.

Plaintiffs' assertion regarding the failure to investigate alleged violations is irrelevant to the claims asserted in the complaint as plaintiffs do not allege any violations based on activities occurring after the search or how such failure amounts to a policy that caused the alleged deprivation of rights.  For example, plaintiffs do not offer evidence of prior incidents of failure to investigate Fourth Amendment violations such that individual Lane County defendants would have been motivated to act in violation of the Fourth Amendment during the search at issue.

Plaintiffs provide no evidence that any Lane County defendant placed a black hood over any plaintiff or that such resulted from a County policy.

Finally, it is unclear how plaintiffs' assertion of commingling funds could have lead to the alleged Fourth Amendment violations.  Presumably plaintiffs are referring to forfeiture of assets.  There is no evidence that any assets were seized or

forfeited and Lane County did not initiate the investigation or search such that any inference can be drawn that it was "lusting" after plaintiffs property to expand its budget and therefore compelled the individual defendants to violate the Fourth Amendment.

The motion for summary judgment is granted as to claims 1-5. However, defendant only relies on its assertion that no individual defendants are left for the State law claims, but as noted above, one of the individual Lane County defendants has yet to be terminated from this case or seek summary judgment. The motion for summary judgment is denied as to the state law claims.

13. Motion for Summary Judgment by Defendants Karol Herbert, Jeff Drullinger, Pete Deshpande, Steve Swenson, Pam Olshanski, Scott Dillon, and Rene Tobler (#202)

After the motion was filed, the parties stipulated to the dismissal of **Swenson, Dillon and Tobler** and thus the motion for summary judgment is denied as moot with respect to these defendants.

A.   Unlawful Search No Probable Cause (Claim One) and Unlawful Search (Judicial Deception) (Claim Two)

1.   Defendant Olshanski

While plaintiffs oppose summary judgment against defendant Olshanski, they do not provide any argument with respect to her.

Presumably, plaintiffs contend that the affidavit was so lacking in probable cause that Olshanski should have known that the warrant was illegal and thus she is not entitled to qualified immunity. Plaintiffs do not argue that Olshanski was more than a line officer entitled to accept the word of superiors that a warrant is valid. See Ramirez, 298 F.3d at 1028 (9th Cir. 2002) (Line officers, on the other hand, are required to do much less. They do not have to actually read or even see the warrant; they may accept the word of their superiors that they have a warrant and that it is valid.). In addition, the only reliable evidence in the record is that defendant Olshanski took no part in the search or investigation leading to the warrant and thus cannot be liable.[6]

### 2.    Defendant Deshpande

Deshpande approved Herbert's request to move forward with the warrant.    Deshpande did not prepare or present the warrant application and his only role in the search was to attend to the plaintiffs while others searched.    Plaintiffs offer no evidence that Deshpande was a team leader (although he was Herbert's supervisor) or that Deshpande participated in the search.    See

---

[6]In fact, Olshanski is not a police officer, but was the public information director for the Eugene Police Department at the time in question.  Plaintiffs do claim that Olshanski "disseminated lies in the news media to distort the truth that there never was a grow operation," but plaintiff has not alleged any claims based on any alleged defamatory conduct not directed toward obtaining a warrant.

Ramirez, 298 F.3d at 1028; Motley v. Parks 432 F.3d 1072, 1082 (9th Cir. 2005) (merely being present at the scene of an alleged constitutional violation, without personal participation, is insufficient to hold an individual officer liable).

While a supervisor can be liable if he sets in motion a series of acts that he should know will result in constitutional violations, See Motley, 432 F.3d at 1081, plaintiffs provide no evidence that merely authorizing Herbert to move forward with the warrant would result in constitutional violation and importantly, plaintiffs provide no evidence that Deshpande supervised the search itself.[7]

Deshpande states that he was a sergeant in charge of the Rapid Deployment Unit (RDU) of the Eugene Police Department and that in that capacity he had day-to-day supervisory authority over officers in the RDU including Herbert. Declaration of Pete Deshpande (#205) at ¶¶ 1-2. Deshpande states that he attended the briefing regarding the search, but did not lead it. Id. at ¶ 4. He further states that he was initially assigned to block traffic, but that after the occupants of the residences had been secured, he entered the Adams residence and attended to the needs of those

---

[7]Plaintiffs also contend, without cite, that Deshpande requested SWAT. Deshpande does state that he requested SWAT team assistance, but that he was not involved in planning or executing SWAT's initial entry to secure the scene. Plaintiffs also make the unsupported assertion that Deshpande allowed arresting officers to not identify themselves.

occupants while other officers searched.  Thus, the only admissible evidence presented establishes no direct or supervisor liability for plaintiffs unlawful search claims against defendant Deshpande.

### 3.    Defendant Herbert

In response to this motion, plaintiffs address and attack the warrant and the affidavit.  The crux of plaintiffs' case appears to be that the affiant, Herbert, intentionally or recklessly mislead Lane County Circuit Court Judge Eveleen Henry in order to obtain the warrant and that the affidavit is so lacking in the indicia of reliability that the warrant is invalid.  Plaintiffs also argue the warrant is the fruit of an illegal search.

As to the invalidity of the warrant on its face, plaintiffs misapply case law in an effort to get around the general principle that officers are entitled to rely on a judge issued warrant. Plaintiffs argue that case law finding a "plain" defect prevents an officer from relying on the warrant at issue in this case. See, e.g., Groh v. Ramirez, 540 U.S. 551, 563 (2004).  In Groh, the Court held that a search warrant that utterly failed to describe the persons or things to be seized was invalid on its face, notwithstanding that the requisite particularized description was provided in the search warrant application.  In this case, plaintiffs present no evidence of plain defect such that even team leaders of the search could be liable for any defect in the

warrant.   There is no obvious defect in the warrant as it adequately described the persons, residence, vehicles, outbuildings, and curtilage to be searched and the items to be seized.

Plaintiffs also assert that the affidavit is lacking in the indicia of reliability such that Herbert is not entitled to qualified immunity.   Plaintiffs request a <u>Franks</u> hearing to establish that the affidavit is lacking.[8]  Plaintiffs contend they will prove the following:

a. Defendant Groshong provided LEDS, NCIC, PPDS, DMV and Oregon Business Registry documents to Defendant Herbert demonstrating that plaintiffs had never been arrested and/or convicted, and had registered lawful jewelry making and landscaping businesses.

b. Physical observations of plaintiffs' residences showed 909 and 923 West Fifth Avenue were under repair and unoccupied, and City of Eugene construction permits prominently displayed at entrances (as well as chimneys not in place).

c. Defendant Nakamura sent Defendant Herbert:
        I. A 1995 IRS Form with Plaintiff Monroe's name on it found at Roman McCloskey's in Portland; and,
        ii. A cashiers check for $2,100 found at Roman McCloskey's in Portland (the check referenced DEMOLITION & DEBRI REMOVAL).

d. Defendants Herbert, Drullinger and Long smelled the light odor of marijuana in the vicinity north of

---

[8]This is not a criminal case and plaintiffs are not entitled to an evidentiary hearing under <u>Franks</u>.  Plaintiffs must produce, at this point, admissible evidence sufficient to create issues of fact to avoid summary judgment.   Plaintiffs may avoid summary judgment by presenting evidence that would satisfy <u>Franks</u> to demonstrate material omissions or false statements.

plaintiffs' rental – 464 Adams Street – but failed to pinpoint the exact location of the source of the smell. Further, Defendant Herbert claimed to have checked for Oregon Health Records of a lawful marijuana grow. Yet, the next-door neighbors at 935 W. Fifth Avenue had permission to lawfully grow marijuana. This is omitted. Plaintiffs' Exhibit 6.

e. Defendants Herbert, Drullinger, Long and Nakamura all went to plaintiffs' three residences between August 21, 2002, and October 17, 2002, and failed to see hundreds of potted landscaping plants between 909 and 923 W. Fifth Avenue, omitting this relevant fact. Plaintiffs' Exhibit 37.

f. On or about October 15, 2002, aerial surveillance photographs show construction activities and plants between 909 and 923 W. Fifth Avenue. Plaintiffs' Exhibit 1.

g. Defendant Herbert omitted the lawful business registry of plaintiffs' landscaping business. Defendant Herbert's Deposition at 104 – 105, lines 8-6.

h. Defendant Herbert omitted that no investigation was done the entire month of September of 2002. Defendant Herbert's Deposition at 181, lines 5-21.

I. Defendant Herbert never had an informant, participating witness, or any other person involved in the investigation of plaintiffs that may claim they saw growing marijuana or any illegal activities involving plaintiffs.

Plaintiffs' Memorandum in Opposition (#267) at pp. 6-7.

Plaintiffs argue that based on the above, a magistrate could not find probable cause. As noted above, a judge did find probable cause, thus plaintiffs apparently center their argument on misrepresentations, material omissions and presentation of stale evidence. In this regard, plaintiffs claim they will prove the following:

a. At Page 2, Paragraph 2, Defendant Nakamura tells Defendant Herbert that on November 7, 2001, retired officer Steve Coffman, PPB, observed a 1990 Volvo registered to Plaintiff Davage at 6907 SE 47th Avenue, Portland, Oregon (stale).

b. At Page 2, Paragraph 3, Defendant Nakamura tells Defendant Herbert that on August 13, 2002, he and other officers serve a search warrant on 6907 SE 47th Avenue, Portland, Oregon and arrest Roman McCloskey seizing 525 marijuana plants. Defendants omit to inform the magistrate that Roman McCloskey had been investigated for over a year on suspicion of manufacturing marijuana while plaintiffs have been only investigated for 13 days, and no investigation the entire month of September of 2002.

c. At Page 3, Paragraph 2, at the time of the search of 6907 SE 47th Avenue, Defendant Nakamura tells Defendant Herbert that he locates miscellaneous paperwork in Plaintiff Monroe's name: a cashier's check dated July 27, 2002, to Roman McCloskey for $2,100. Defendant Herbert omits the cashiers check is actually made out to "ROMAN MCCLOSKEY & ROSE CITY MAT***," and references the payment for "DEMOLITION & DEBRI REMOVAL." Additionally, in this paragraph, Defendant Herbert reports back in 1997 via Oregon DMV "McCloskey and Monroe were co-registered owners of a vehicle" (stale).

d. At Page 3, Paragraph 3, Defendant Nakamura provided Defendant Herbert with an application dated September 22, 1998 stating that Roman McCloskey and Marcella Monroe once shared the same mailbox address at the Eugene Mailbox Center (stale).

e. At Page 3, Paragraph 5, Defendant Herbert states that three businesses are registered at Plaintiff Monroe's residence at 909 W. 5th Avenue, Eugene, and they are Emerald City Maintenance, M.Urge and Metal Urge (Plaintiff Davage's jewelry making business). Defendant Herbert omits to state that Defendant Groshong provided her with plaintiffs' business registry information. Defendant Herbert was given, but omitted, the business registry document stating that Plaintiff Monroe also has a business known as "Perennial Garden and Landscape Maintenance."

f. On August 21, 2001, Defendants Herbert and Drullinger stand in the vicinity "North of 464 Adams Street and

could smell a light odor of fresh marijuana," but fail to pinpoint the exact location of the source of the smell.

g. At Page 5, Paragraph 4, on August 23, 2002, Defendant Drullinger tells Defendant Herbert he sees a small hole at the base of a rafter (and speculates to a "pin hole" type camera) in an outbuilding near 464 Adams Street. After the search on October 17, 2002, Defendants did not find a "pin hole" camera.

h. At Page 5, Paragraph 5, on this date, Defendant Drullinger tells Defendant Herbert he hears a "humming noise" and speculates to equipment possibly used in marijuana grow operations. After the search on October 17, 2002, defendants did not find "ballasts, humidifiers, pumps and odor eliminators."

I. At Page 5, Paragraph 6, on August 23, 2002, Defendant Nakamura in plain clothes and without identifying himself as a police officer speaks with Plaintiff Davage and identifies him from an Oregon DMV photograph. Defendant Nakamura also tells Defendant Herbert that he "observed approximately 20 black plastic planting pots" near 909 W. 5th Avenue, as well as four large bags of planting soil. Defendants Nakamura and Herbert omit that Defendant Nakamura did not smell the odor of marijuana while he was physically present on plaintiffs' properties and that between 909 and 923 W. 5th Avenue plaintiffs have approximately six hundred potted landscaping plants.

j. On August 27, 2002, Defendant Long tells Defendant Herbert that he smells the light odor of fresh marijuana in the vicinity to the North of 464 Adams Street, but fails to pinpoint the exact location of the source of the smell.

k. At Page 6, Paragraph 3, on August 28 2002, Defendant Herbert spoke with Plaintiff Davage while he was painting 923 W. 5th Avenue. She did not state she was a police officer. She determined the house was vacant. Plaintiff Davage told her he lives at 909 W. 5th Avenue. She saw the upper level "gutted out and there was a large hole (909) in the upper west wall." Plaintiff Davage told her he was renovating both locations.  Defendant Herbert omits that she did not smell the odor of marijuana while she was physically present on plaintiffs' properties.

l. At Page 6, Paragraph 4, on August 29, 2002, Defendants Klinko and Drullinger heard voices from the outbuilding.

m. Defendants did not investigate plaintiffs the entire month of September of 2002. Defendant Herbert Deposition at Page 181, Lines 5-21. This fact is omitted. n. At Page 6, Paragraph 5, Defendant Long tells Defendant Herbert that he smells the light odor of fresh marijuana in the vicinity North of 464 Adams Street, but fails to pinpoint the exact location of the source of the smell.

Id. at pp. 8-11.

Plaintiffs assert that the foregoing establishes misstatements and omissions making the warrant invalid, the search illegal, and demonstrate that the warrant was procured by illegally obtained evidence. There is no showing that evidence was illegally obtained.

While the court is troubled by Herbert's omission regarding the cashiers check, Herbert is at least entitled to qualified immunity with respect to probable cause.

A section 1983 plaintiff who challenges the validity of a search warrant by asserting that law enforcement agents submitted a false affidavit to the issuing judicial officer must satisfy the two-part test developed by the Supreme Court in Franks v. Delaware, 438 U.S. 154, 155-56, 98 S.Ct. 2674, 2676-77, 57 L.Ed.2d 667 (1978). See Lippay v. Christos, 996 F.2d 1490, 1502, 1504 (3d Cir.1993). This is true whether the alleged falsehood is an affirmative misrepresentation or a material omission. See, e.g., United States v. Frost, 999 F.2d 737, 742-43 & n. 2 (3d Cir.1993); Stewart v. Donges, 915 F.2d 572, 582 (10th Cir.1990). Under Franks and its progeny, the plaintiff must prove, by a preponderance of the evidence, (1) that the affiant knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant; and (2) that such statements or omissions are material, or necessary, to the finding of probable cause. See Franks, 438 U.S. at 171-72, 98 S.Ct. at 2684-85;

Frost, 999 F.2d at 742-43; <u>Velardi v. Walsh</u>, 40 F.3d 569,
573 (2d Cir.1994).

<u>Sherwood v. Mulvihill</u>, 113 F.3d 396, 399 (3d Cir. 1997).

Plaintiffs fail to support any allegations of intentional
misrepresentations.[9] Plaintiffs rely heavily on alleged omissions.
Despite the lengthy list of alleged <u>Franks</u> violations, plaintiffs'
argument boils down to the following omissions: (1) that the
next-door neighbors at 935 W. Fifth Avenue had permission to
lawfully grow marijuana; (2) Herbert, Drullinger, Long and Nakamura
all went to plaintiffs' three residences between August 21, 2002,
and October 17, 2002, and failed to see hundreds of potted
landscaping plants between 909 and 923 W. Fifth Avenue; (3) that
plaintiffs had a lawful business registry of a landscaping
business; (4) that no investigation was done the entire month of
September, 2002; (5) that Roman McCloskey had been investigated for
over a year on suspicion of manufacturing marijuana while
plaintiffs had been only investigated for 13 days; (6) that the
cashiers check is actually made out to "ROMAN MCCLOSKEY & ROSE CITY
MAT***," and references the payment for "DEMOLITION & DEBRI
REMOVAL."; (7) that defendant Groshong provided Herbert with
plaintiffs' business registry information, but Herbert omitted the

_____

[9]Plaintiffs do offer what they consider to be "speculation" on
the part of the investigating officers, but the "speculations" are
based on training and experience and is the type of information
officers may legitimately relate in the affidavit seeking a
warrant.  At best, the "speculation" amounts to negligence which
does not Satisfy <u>Franks</u>.

business registry document stating that plaintiff Monroe also has a business known as "Perennial Garden and Landscape Maintenance; (8) that defendant Nakamura did not smell the odor of marijuana while he was physically present on plaintiffs' properties and that between 909 and 923 W. 5th Avenue plaintiffs have approximately six hundred potted landscaping plants; and (9) that defendant Herbert did not smell the odor of marijuana while she was physically present on plaintiffs' properties.

As noted above, plaintiffs appear to seek to prove their innocence and to explain away the evidence that supports probable cause. The issue is not whether the plaintiffs actually are guilty of a marijuana grow, but whether there was probable cause to believe they had such a grow. The "omissions," while perhaps probative of guilt, are not material or necessary to a finding of probable cause. There was a substantial basis for concluding probable cause existed and inclusion of the "omissions" do not support a conclusion that no probable cause could have existed. Moreover, the omissions do not create a falsehood in the warrant application.

The court is also troubled with respect to the failure to pinpoint with precision the location of the smell of marijuana and that perhaps a neighbor was growing marijuana. While plaintiffs provide evidence that a neighbor was registered in the medical marijuana program as of May 21, 2002, plaintiffs provide no

evidence that Herbert was aware of this or that marijuana was actually growing at this neighbor's residence.[10]  Even if such information were available, it provides evidence of an additional possible source of the smell, but does not necessarily dispel probable cause.

At best, the alleged omissions demonstrate negligence and are thus insufficient to demonstrate a violation of <u>Franks</u>. Considering the totality of the circumstances, the affidavit supported a finding of probable cause.  Davage's car was seen at McCloskey's house where 525 marijuana plants were recovered in November of 2001.  A check for $2100 to McCloskey from Monroe was recovered during a raid on McCloskey's home (the notations on the check notwithstanding), other documents linked to Monroe were recovered during the McCloskey raid, several police officers on separate occasions smelled marijuana near the subject residences, equipment that could be used for a grow operation was observed, and utility records that could be construed as consistent with a grow operation were obtained.  The legitimate explanations offered for the observations and the alternatives offered for the source of the marijuana smell are just that-alternatives.  Probable cause does not require a preponderance of the evidence, just a reasonable

---

[10]In the affidavit, Herbert states that she was informed by the State of Oregon that no one residing at the plaintiffs' residences had medical marijuana cards.  There is no indication that any adjacent addresses were checked or that there is a duty to check.

suspicion and inclusion of all the information requested by plaintiffs does not dispel that suspicion. Accordingly, Herbert is entitled to qualified immunity as to the unreasonable search claims. This is especially true in light of the fact that an attorney reviewed and approved the affidavit.[11] Probable cause existed and there is no adequate evidence of "judicial deception."

### 4. Defendant Drullinger

Plaintiffs contend that Drullinger was a team leader of the search and engaged in acts of judicial deception in an effort to obtain the warrant. Specifically, plaintiffs contend that Drullinger engaged in the following unlawful acts:

a. On August 21, 2002, claims he smelled marijuana near the vicinity of 464 Adams Street. Defendant Drullinger fails to pinpoint the exact location of the source of the smell.

b. On August 23, 2002, Defendant Drullinger is in the alley to the North of 464 Adams Street and speculates that he sees a small hole at the base of a rafter (and speculates to a "pin hole" type camera), a thick dark power cord, and hears a "humming" noise. During the execution of the search warrant, defendants found none of the above.

---

[11]Under the qualified immunity analysis, the court inquires as to whether a constitutional violation occurred and if so then whether the law regarding that violation was clearly established. See Saucier v. Katz 533 U.S. 194, 201 (2001). The District Attorney's approval of the affidavit demonstrates that Herbert was objectively reasonable in seeking the warrant and that it was not clearly established that her actions were unconstitutional. See Ortiz v. Van Auken, 887 F.2d 1366, 1370-71 (9th Cir. 1989) (officer is entitled to rely on attorney in obtaining a warrant and not required to second-guess legal advice).

c. On August 23, 2002, Defendant Drullinger omits that he did not smell marijuana near the vicinity of 464 Adams Street.

d. After August 23, 2002, Defendant Drullinger has no more investigative or speculative observations to report.

Plaintiffs assert that Drullinger knew that his investigative and speculative observations would be included in the search warrant application and that all of his observations had no indicia of probable cause.[12] Plaintiffs provide no evidence that Drullinger engaged in any conduct to deceive the judge who issued the warrant. Plaintiffs provide no authority for the proposition that merely relaying observations to an investigating officer, even one who eventually seeks a warrant, can be the basis for liability. Moreover, plaintiffs provide no evidence that Drullinger was anything more than a line officer with respect to the search and thus he is entitled to summary judgment pursuant to Ramirez, 298 F.3d at 1028. Drullinger's role in the search was limited to attending a briefing and then to log evidence and videotape portions of the premises. A judge found probable cause to exist and Drullinger was entitled to rely on the resulting warrant in taking part in the search. Accordingly, Drullinger is entitled to summary judgment with respect to the unreasonable search claims.

---

[12]Plaintiffs also again assert there was conduct intended to unlawfully obtain plaintiffs' property through forfeiture. Plaintiffs base Drullinger's responsibility on an evidence/property report completed by Drullinger. As noted above, plaintiffs have not made a claim based on forfeiture and none of the plaintiffs' property was forfeited.

B.   Excessive Force (Third Claim)

Defendants conclude, based on plaintiffs' response, that plaintiff does not oppose summary judgment in favor of defendants Herbert, Drullinger, Deshpande, and Olshanski on the third claim for relief.  Because plaintiffs do not specifically respond to each claim, it is difficult to determine what evidence plaintiffs assign to which claim, but plaintiffs do not concede the motion for summary judgment on any claim for any of these defendants. Plaintiffs merely assert the defendants are not entitled to summary judgment and offer up a laundry list of alleged actions, omissions, etc.


1.   Defendant Olshanski

Olshanski played no role in the search and thus could have not have engaged in excessive force.   Accordingly, Olshanski is entitled to summary judgment on the third claim for relief.


2.   Defendant Deshpande

Apparently plaintiffs rely on Deshpande's note that he requested SWAT support and the assertion that he allowed officers not to identify themselves.  There is no evidence that Deshpande allowed identities to be hidden.  There is no evidence that Deshpande directed SWAT to use excessive force.  However, as noted above, he did state that he attended to the needs of the occupants

of the 464 Adams Street residence, including plaintiffs, during the plaintiffs' detention. Plaintiffs offer no evidence that Deshpande was present during the alleged excessive force in securing plaintiffs and the only admissible evidence in the record is that Deshpande did not arrive inside until after plaintiffs were handcuffed.[13] Plaintiffs do allege in the complaint that the detention was unreasonably long and degrading, that the handcuffs were tight, that they were forced to remain in a numbing position for hours, and forced to remain only partially dressed and cold. Merely securing the occupants during a valid search does not amount to excessive force. See Mueller v. Mena, 544 U.S. 93, 100 (2005) (use of handcuffs to detain occupants during execution of search warrant is reasonable). However, "a detention conducted in connection with a search may be unreasonable if it is unnecessarily painful, degrading, or prolonged." Franklin v. Foxworth, 31 F.3d 873, 875 (9th Cir. 1994). Even though plaintiffs fail to adequately respond, the motion for summary judgment is denied on the excessive force claim as plaintiffs' own testimony creates issues of fact as to the reasonableness of the detention once Deshpande was present.[14] See Liston v. County of Riverside, 120

---

[13]Deshpande asserts he had tight fitting cuffs replaced with better fitting cuffs.

[14]Although Deshpande maintains that he "may have directed one or more officers to loosen and/or remove the handcuffs of one or more of the four occupants," the record is unclear as to how long he was present. There are issues of fact as to whether the

(continued...)

F.3d 965, 981 (9th Cir. 1997)(genuine issue of fact regarding the reasonableness of detention with respect to officers, who by their presence in the home, assisted in restraining plaintiffs). Although defendants claim the law was not clearly established, at the time, regarding the contours of an unreasonable detention such that they would know that a detention that lasted for about four and a half hours, required plaintiffs to remain in a numbing position, required plaintiffs to remain cuffed, and required plaintiffs to remain only partially clothed for two hours while cold was unconstitutional, the case law demonstrates otherwise. See Meredith v. Erath, 342 F.3d 1057, 1061-62 (9th cir. 2003):

> Police may detain persons without probable cause while executing a search warrant if justified by the circumstances. Michigan v. Summers, 452 U.S. 692, 705, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981). Such a detention may be unlawful under the Fourth Amendment "either because the detention itself is [unreasonable] or because it is carried out in an unreasonable manner." Franklin v. Foxworth, 31 F.3d 873, 876 (9th Cir.1994). A seizure must be "carefully tailored" to the law enforcement interests that, according to the Summers line of cases, justify detention while a search warrant is being executed. Ganwich v. Knapp, 319 F.3d 1115, 1122 (9th Cir. 2003) (quoting Florida v. Royer, 460 U.S. 491, 504, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983)). Where such law enforcement interests arguably justify a detention, we balance those interests against the intrusiveness of the seizure to the persons detained. Summers, 452 U.S. at 699-705, 101 S.Ct. 2587 (1981); [Footnote omitted] Ganwich, 319 F.3d at 1120. Thus, the reasonableness of a detention depends not only on if it is made, "but also on how it is carried out." Franklin, 31 F.3d at 875 (quoting Tennessee v. Garner, 471 U.S. 1, 7-8, 105 S.Ct.

---

[14](...continued)
detention was unreasonable in length and unreasonably humiliating in addition to being unreasonably painful.

1694, 85 L.Ed.2d 1 (1985)). "**[A] detention conducted in connection with a search may be unreasonable if it is unnecessarily painful, degrading, or prolonged** [.]" <u>Id</u>. at 876.  [Footnote omitted].

We have not previously addressed the reasonableness of detaining a person in handcuffs during the execution of a search warrant for evidence. [Footnote omitted] **We have held, however, that the use of guns and handcuffs during an investigatory detention "must be justified by the circumstances."** <u>Robinson v. Solano County</u>, 278 F.3d 1007, 1014 (9th Cir. 2002) (quoting <u>Baker v. Monroe Township</u>, 50 F.3d 1186, 1193 (3d Cir. 1995)). We held in <u>United States v. Bautista</u>, 684 F.2d 1286 (9th Cir. 1982) that the use of handcuffs was justified during a Terry stop to ensure officer safety from suspected violent criminals and to prevent their escape. <u>Id</u>. at 1289. We have also commented, in a case involving the detention of a suspect during a search for contraband, that "handcuffing substantially aggravates the intrusiveness" of a detention.  <u>Washington v. Lambert</u>, 98 F.3d 1181, 1188 (9th Cir. 1996) (internal quotation marks omitted); <u>Bautista</u>, 684 F.2d at 1289 (same).
**During searches for narcotics, courts have required a showing of justifiable circumstances for using handcuffs.** Compare <u>Baker v. Monroe Township</u>, 50 F.3d 1186, 1193-94 (3d Cir. 1995) (holding that officers were not justified in handcuffing a mother and her teenage children who were approaching a residence where the officers were executing a search warrant for narcotics), with <u>Torres v. United States</u>, 200 F.3d 179, 185-86 (3d Cir.1999) (permitting the use of handcuffs because "the agents had good reason to fear violence or destruction of evidence as they entered the appellees' home" to search for narcotics); <u>United States v. Fountain</u>, 2 F.3d 656, 663 (6th Cir.1993) (same), overruled on other grounds by <u>Trepel v. Roadway Express, Inc.</u>, 194 F.3d 708, 717 (6th Cir. 1999).

(emphasis added).

Accordingly, the law regarding detention was clearly established that prolonged detentions that are unnecessarily painful and degrading violate the Fourth Amendment.  Plaintiffs allege that they were handcuffed for four hours causing pain and

that it was degrading in that plaintiff Monroe was kept partially nude and cold for two hours.  While it is true that the Ninth Circuit found that as of September 8, 2003, it was not clearly established that "simply handcuffing a person and detaining her in handcuffs during a search for evidence would violate her Fourth Amendment rights" without justifiable circumstances, Meredith, 342 F.3d at 1063, it was clearly established that a detention conducted in connection with a search is unreasonable it if is unnecessarily painful.  See id. The Meredith court specifically referenced tight handcuffs and although Deshpande asserts that he had the allegedly tight handcuffs removed with respect to plaintiff Monroe, she asserts that she was in excessively tight handcuffs for 45 minutes. The  Meredith  court  noted  even  35  minutes  was  too  long.   In addition, the plaintiffs in this case complain that not only were they caused pain by the tightness of the handcuffs, but by the position and lack of clothes causing pain to their backs, neck, and shoulders as well as wrists.  As the Meredith court stated, no reasonable officer could believe that the abusive application of handcuffs was constitutional.  See id. There are issues of fact as to whether plaintiffs were subject to abusive use of handcuffs and detained in a degrading manner.

Defendants also rely on Mueller v. Mena, 544 U.S. 93, 100 (2005) and Los Angeles County, California v. Rettele, 127 S.Ct. 1989 (2007) in arguing that the detention was reasonable.  While

the Mena Court did find a detention lasting two to three hours was justified, the circumstances involved officers executing a search warrant seeking weapons and evidence of gang membership in the wake of drive-by shooting and thus justified by the nature of materials sought and the alleged gang membership of the detainees.  In this case, while there was some suspicion of weapons, the length and manner of the detention alleged to dispel that suspicion is unreasonable.[15]  Moreover, while the Rettelle Court found that officers acted reasonably while executing a valid warrant to search residence when they ordered naked residents out of their bed, and held them at gunpoint, the officers only did so for one to two minutes.  The court found that officers are not free to force occupants of a place to be searched to remain motionless and standing for any longer than necessary and recognized that a prolonged detention might render a search unreasonable.  In this case, it is alleged that plaintiffs, while only partially covered by officers, were required to remain handcuffed, relatively motionless, and in painful positions for up to four and a half hours.  Fear for safety does not justify such intrusive procedures under these circumstances.

---

[15]Ironically, defendants' assertion that a plaintiff in the companion case was freed from handcuffs, allowed to get dressed and go to work, serves to create additional issues of fact regarding the length and manner of the detention of the plaintiffs in this case.  This fact could demonstrate that the officers did not fear harm from the detainees or destruction of evidence if they were not detained, especially in the allegedly humiliating manner.

### 3.   Defendant Herbert

For much the same reason, defendant Herbert is not entitled to summary judgment with respect to the excessive force claim. Although Hebert states that she did not use any force to secure plaintiffs, she was present once they had been handcuffed and allegedly subjected to painful and degrading detention.

### 4.   Defendant Drullinger

Drullinger also was present and therefore is not entitled to summary judgment.

### C.   Unreasonable Destruction of Property (Excessive Force) (Claim Four)

Plaintiffs fail to present any evidence that these defendants engaged in destruction of property or were present during such destruction.  Plaintiffs further provide no evidence that any of these defendants directed such destruction or provided supervision in such a manner as to allow the destruction to happen.  The motion for summary judgment is granted as to defendants Olshanski, Deshpande, Herbert and Drullinger.

### D.   Unreasonable Seizure Claim (Fifth Claim)

Because of defendants Deshpande, Drullinger and Herbert's presence during the detention, there is an issue of fact as to whether they participated in the alleged illegal arrest. However, these defendants argue, for the first time with respect to the current set of motions, that the arrest was appropriate or that they are at least entitled to qualified immunity. There is no dispute that defendant Olshanski did not participate in the arrest and therefore, she is entitled to summary judgment on this claim.

Defendant Herbert is the named arresting officer. The issue is whether she had probable cause to arrest the plaintiffs. Plaintiffs offer virtually no argument in response:

> Defendants Deshpande, Herbert and Drullinger are police officers under the laws of the State of Oregon. They moved forward with the arrests of plaintiffs without probable cause for violating ORS 475.992. Defendant Herbert cited and submitted custody reports for plaintiffs for violating ORS 475.992 without finding any evidence to support (or probable cause to believe) that plaintiffs had violated that statute. Accordingly, Defendants Deshpande, Herbert and Drullinger conspired to violate plaintiffs' Fourth Amendment rights, resulting in plaintiffs' unlawful arrests.

Plaintiffs' Memorandum in Response (#267) at p. 12. In addition to the information turned up in the investigation that supported probable cause for the warrant, the search revealed: (1) The main room of the basement of 909 West 5th Avenue contained materials consistent with the manufacture and delivery of marijuana including a large role of black Mylar plastic, reflective sheeting, 3 boxes of sandwich bags, three fans, and a Nelson water timer; (2)

marijuana leaves found in a shop-vac in the main room of the basement of 909 West 5th Avenue; (3) the center room of the basement contained documentation regarding how to grow marijuana indoors and numerous venting systems were discovered hidden in the ceiling; (4) in the south basement room was found 24 electrical outlets added after the original construction of the residence, 5 water outlets, a large exhaust fan connected to 16 feet of 6 inch flexible tubing, 2 additional fans, 2 lighting timers, a four foot fluorescent light, 6 Verilux "instant sun" grow light bulbs, and a large hole cut into the cement foundation wall with an attached 12 inch "squirrel fan"; and (5) the basement of 464 Adams Street contained vent tubing and Rubbermaid containers with yellow/brown stains consistent with growing marijuana starter plants.

Despite plaintiffs' earlier efforts to explain away these findings as legitimate items for lawful purposes, it certainly is enough to establish probable cause for an arrest. An arrest is supported by probable cause if, "under the totality of circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the defendant] had committed a crime." Grant v. City of Long Beach, 315 F.3d 1081, 1085 (9th Cir. 2002). Accordingly, there can be no claim against any defendant for an illegal arrest and claim 5 is dismissed altogether.

### E.   State Law Claims

Defendants Olshanski, Deshpande, Herbert and Drullinger are entitled to summary judgment on the State law claims under the Oregon Tort Claims Act.

### 14.  Motion for Summary Judgment by Defendant Clifton Harrold (#215)

The public body is the only proper defendant with respect to the state law claims and summary judgment is therefore appropriate as to those claims.

As it has now been established that the warrant validly permitted the search to take place, and given that Harrold played no role in obtaining the warrant or planning its execution, the motion for summary judgment is granted as to the unlawful search claims (Claims One and Two).

Harrold, however, was the "point person" on the entry team at 464 Adams and a shed behind 464 Adams where the excessive force is alleged to have occurred.  Although Harrold states that he did not use any force and that he did not point his assault rifle at anyone, there are issues of fact as to whether plaintiffs were subject to excessive force during their initial capture and detention.  Accordingly, summary judgment is denied as to the excessive force claim (Third Claim).

Plaintiffs only point to a damaged door at 464 Adams as evidence supporting their destruction of property claim against Harrold.  The only supported evidence in the record is that the entry team announced their presences prior to entering the 464 Adams residence and it appears that occupants at that time were actually in the shed behind the house and thus could not have answered the door.  Thus, breaking through the door in order to effectuate the search did not violate the *knock and announce* rule. Moreover, plaintiffs rely on hearsay evidence to establish that Harrold personally damaged the door.  However, the only admissible evidence presented is that Officer Vinje forced open the door.  The motion for summary judgment is granted on the Fourth Claim.

Finally, because the arrest of plaintiffs was appropriately based on probable cause, the motion for summary judgment is granted as to the fifth claim.


15.  Motion for Summary Judgment by the City of Eugene (#220)

As noted above, Congress did not intend local governments to be held liable under section 1983 unless action pursuant to official government policy of some nature caused a constitutional tort." Monell v. New York City Dept. of Social Services, 436 U.S. 658, 691 (1978).  Plaintiffs contend that the City of Eugene has a policy of: (1) not supervising its officers (who may defectively investigate a case or verify accuracy of statements made in

affidavit); (2) not supervising its officers pursuant to an INET agreement; (3) allowing unsupervised violations of the Fourth Amendment pursuant to the INET agreement; (4) allowing SWAT members to mask their identities; (5) training officers to hide their identities; (6) through policymaking by defendant Herbert, allowing violation of plaintiffs' Fourth Amendment rights through gaining access to utility records; and (7) failing to investigate misconduct by officers in this case.

Plaintiffs also argue that the INET agreement demonstrates an intent to carry out a conspiracy to violate plaintiffs' Fourth Amendment rights. Apparently this relates to plaintiffs' added claim of conspiracy which is addressed in summary judgment motions filed after the initial set of summary judgment motions.

As noted above, plaintiffs have not produced evidence that probable cause was lacking for the search warrant, or that any "judicial deception" occurred in obtaining the warrant. Plaintiffs' efforts to demonstrate Fourth Amendment violations based on alleged omissions or "speculation" are unavailing and thus plaintiff can not show a violation with respect to the search warrant, much less a policy or custom that resulted in such a violation. As noted above, a review of the INET agreement reveals no such policy and indeed the INET agreement requires adequate supervision. Moreover, there is no evidence that Herbert was a final policymaker for the City of Eugene. Plaintiffs provide no

admissible evidence that there is a custom or policy of any kind, be it for SWAT or other Eugene officers, that allows officers to not identify themselves.  In addition, plaintiffs fail to provide any authority for the proposition that utility records were illegally obtained[16] or that such obtainment occurred pursuant to a City custom or policy.  Accordingly, the City of Eugene is entitled to summary judgment on plaintiffs' First and Second Claims for relief.

Additionally, plaintiffs fail to produce sufficient evidence of any policy that allegedly produced action that caused excessive force against persons or property.  Accordingly, the motion for summary judgment with respect to plaintiffs' Fourth and Fifth Claims for relief is granted as to the City.[17]

Finally, with respect to plaintiffs' assertion that the City failed to investigate the misconduct of officers in this case, plaintiffs provide no evidence that this alleged lack of action, after the alleged violations occurred, resulted in the actions occurring.  Plaintiffs do not allege any violations based on

---

[16]Indeed, despite plaintiffs' statement that the EWEB records were password protected, there is no privacy interest protecting such third party records.  <u>See</u> <u>State v. Johnson</u>, 340 Or. 319, 336 (2006) (we cannot identify a source of law that establishes that defendant also had some interest in keeping private any records kept, generated and maintained by a third party).

[17]As noted above, a review of the INET agreement reveals no such policy.  Moreover, there is no evidence that Herbert was a final policymaker for the City of Eugene.

activities occurring after the search and do not show how such failure amounts to a policy that caused the alleged deprivation of rights.  Accordingly, the City of Eugene's motion for summary judgment is granted as to all federal claims.

Defendants contend that as to the individual defendants who have moved for summary judgment on the state law claims, there is no issue of fact as to whether any actions caused such alleged violations.  However, to the extent excessive force may have occurred, the motion is denied as to battery and assault claims.

Curiously, defendants argue that for those individuals who have not moved for summary judgment, plaintiffs have not shown how the City is vicariously liable for the tortious acts of its employees.  As noted above, under the Oregon Tort Claims Act, "every public body is subject to action or suit for its torts <u>and those of its officers, employees and agents</u> acting within the scope of their employment or duties."  ORS § 30.265 (emphasis added). Accordingly, the motion for summary judgment is denied as to the state law claims.

16.  <u>Motion to Dismiss by the City of Eugene (#224)</u>

The City also filed a motion to dismiss based on the summary judgment motion.  To the extent summary judgment has been granted, the motion is denied as moot, otherwise the motion is denied.

17.  Motion for Summary Judgment by the City of Portland, Scott
Groshong, and Arthur Nakamura (#225)

     Part of the basis for the probe at the subject locations was
a prior investigation by Portland police officer, defendant
Nakamura.  That investigation revealed some links to plaintiffs
with respect to the 525 plant grow operated by Roman McCloskey.
The subsequent investigation led to a search warrant executed on
the subject residences.  Law enforcement officers believe that
plaintiffs dismantled a grow operation prior to the search and
plaintiffs argue that all of the materials only show that they
engaged in legitimate businesses.  Regardless of the fact that
plaintiffs were not prosecuted, as noted above, there was probable
cause to get a search warrant and there was probable cause to
arrest plaintiffs.

     Both defendants Nakamura and Groshong of the Portland police
were present during the search of plaintiffs' residences as
observers in order to determine if any further information might
aid in the prosecution of Roman McCloskey.  Both defendants
maintain that their minimal participation in the search entitles
them to qualified immunity.  In addition, the City of Portland
argues that there is no custom or policy on its part that could
have possibly resulted in the alleged constitutional violations.

Both Officers note each entered the 464 Adams residence after Eugene police made the initial entry and after plaintiffs had been detained.  Nakamura notes that the only physical contact he had with plaintiffs occurred when he removed plaintiff Davage's handcuffs so he could go to the bathroom.  This is enough to preclude summary judgment as to the excessive force claim as plaintiffs can testify to a detention conducted in connection with the search that was unreasonable in that it was unnecessarily painful, degrading, and/or prolonged.  However, plaintiffs fail to present sufficient evidence with respect to the other federal claims and summary judgment is granted as to the search claims, destruction of property claim, and the unlawful arrest claim.[18]  In addition, the individual defendants are entitled to summary judgment as to the state law claims under the Oregon Tort Claims Acts.

Plaintiffs present no supported evidence that any alleged constitutional violation resulted from any custom or policy of the City of Portland and the City is entitled to summary judgment as to all federal claims against it.  The City of Portland also provides a discussion of the elements of each of the state law claims and assert that plaintiffs have failed to state a claim for any of

---

[18]For instance, while plaintiffs contend that defendant Nakamura should have known that the information he passed on to Herbert would be used in an affidavit in support of a warrant application, plaintiffs provide no evidence that Nakamura provided intentionally false information.

those claims.  Plaintiffs do not address the arguments and thus the motion is granted as to the City of Portland as to the state law claims.  Although there is an issue of fact as to the excessive force claims because the individual Portland Officers were present during the alleged excessive force (at least as to painful detention once the plaintiffs had been secured), plaintiffs present no evidence that either Nakamura or Groshong actually participated directly in any excessive force and the only reason they remain for the Fourth Amendment claim is because of a duty for officers to prevent other officers from engaging in excessive force.  Accordingly, the City's motion for summary judgment is granted.


18.  Motion to Compel Production of Documents and for an Order to Unseal Documents (#237)

Plaintiffs move the court for an order compelling the District Attorney of Multnomah County to produce

> documents in the prosecution of Roman McCloskey in the case, *State of Oregon v. Roman McCloskey*, in the Circuit Court of the State of Oregon, in the County of Multnomah, Case Number 02-08-34701, a conviction for manufacturing and distribution of marijuana that was expunged and sealed in 2005, during the pendency of this lawsuit.

It appears that counsel served this motion on defendants in this case, but there is no indication that the motion was served on the Multnomah County District Attorney.  Accordingly, the motion is denied.

19.  Motion  to  Strike  Plaintiffs'  Exhibits  in  Opposition  to
Defendants  Herbert,  Drullinger,  Deshpande,  Swenson,  Olshanski,
Dillon and Tobler's Motion for Summary Judgment (#306)

     Many of the exhibits offered by plaintiffs, as noted above,
are often irrelevant, not authenticated and/or are hearsay.  The
documents include inadmissible newspaper articles, wikipedia
entries, letters, website information, etc.  At this point, it
appears that the only evidence that could be helpful to plaintiffs
is their own testimony regarding excessive force.  To the extent
plaintiffs rely on hearsay or irrelevant documents, they will not
be considered in determining whether issues of fact exist.
Therefore, the motion to strike is denied, but without prejudice to
raise appropriate motions in limine should this case reach trial.


20.  Motion to Strike Plaintiffs' Exhibits by Eugene, Springfield,
and Lane County Defendants (#350)

     The motion is denied for the same reasons as above.

21. Motion for Summary Judgment on Plaintiffs' Tenth Claim by Defendants City of Eugene, City of Springfield, Lane County, Jennifer Bills, Casey Froehlich, Eric Klinko, Lee Thoming, Thomas Turner, Jerry Webber, Brian Humphreys, Richard Lewis, and Clifton Harrold (#356)

After many of the motions for summary judgment had been filed, plaintiffs amended their complaint to add a tenth claim for relief; a section 1983 conspiracy claim.

Defendants' counsel offers no memorandum in support of this motion specifically, preferring instead to rely on the previous motions for summary judgment which did not address conspiracy. However, the claim should be dismissed anyway. Plaintiffs allege:

> Defendants, acting in their individual capacities and under the color of law, having conspired together and with others, reached a mutual understanding and acted to undertake a course of conduct that violated Plaintiffs' constitutional rights, to wit:
>
>> a. The Defendants agreed and acted to intentionally falsify and omit exonerating information placed into an affidavit for a search warrant to get a search warrant to search Plaintiffs' persons, properties and private effects.
>>
>> b. The Defendants agreed and acted to intentionally arrest Plaintiffs as afore mentioned.
>>
>> c. The Defendants agreed and acted to intentionally fabricate and contrive the basis for probable cause stated in Defendant Karol Herbert's affidavit in support of a request for a search warrant for Plaintiffs' persons, properties and private effects.

       d. The Defendants agreed and acted to intentionally fabricate and contrive charges against Plaintiffs, and initially lodged charges against Plaintiffs, when Defendants knew at the time of Plaintiffs' arrest that there was no probable cause then and there existing to charge Plaintiffs with violations of state and/or federal criminal laws.

       e. The Defendants agreed and acted with others to throw plaintiff Monroe to the ground which resulted in bruises and contusions, and threaten the use of force that was unnecessarily excessive and intimidate and terrorize Plaintiffs who were cooperating.

       f. On or about October 17, 2002, the Defendants agreed and acted with others to falsify evidence and police reports to further the erroneous charges of criminal conduct against Plaintiffs, when no evidence of a criminal violation was found during the search of plaintiff's properties.

Vague, conclusory allegations of conspiracy or involvement in civil rights violations do not state a claim. <u>Burns v. County of King</u>, 883 F.2d 819, 821 (9th Cir. 1989); <u>Gibson v. United States</u>, 781 F.2d 1334, 1343 (9th Cir. 1986). Plaintiffs must allege with some degree of particularity overt acts or specific facts to support allegations of constitutional conspiracy. <u>Burns</u>, 883 F.2d at 821; <u>Buckey v. County of Los Angeles</u>, 968 F.2d 791, 794 (9th Cir. 1992).

To prove a conspiracy, Plaintiffs must show "an agreement or 'meeting of the minds' to violate constitutional rights." <u>Franklin v. Fox</u>, 312 F.3d 423, 441 (9th Cir. 2002) (citations omitted). Each individual does not need to know the plan; sharing the common

purpose of the conspiracy is sufficient. Id.  The elements of a civil conspiracy are (1) the formation and operation of a conspiracy, (2) wrongful conduct in furtherance of the conspiracy, and (3) damages arising from wrongful conduct. Applied Equipment Corp. v. Litton Saudi Arabia Ltd., 7 Cal.4th 503, 511, 28 Cal.Rptr.2d 475, 869 P.2d 454 (Cal. 1994).  A conspiracy does not stand as an independent claim, rather it is a legal doctrine to establish joint liability by the conspirators for the underlying tort. See Entm't Research Group v. Genesis Creative Group, 122 F.3d 1211, 1228 (9th Cir. 1997).  Each member of the conspiracy must be able to commit the underlying tort, intend the success of the purpose of the conspiracy, and all the elements of that tort must be satisfied. Applied Equipment Corp. v. Litton Saudi Arabia Ltd. 7 Cal.4th 503, 511, 28 Cal.Rptr.2d 475, 869 P.2d 454 (1994).  If a plaintiff fails to plead the underlying claim, the corresponding conspiracy claim must also fail.  See id.  ("It is the acts done and not the conspiracy to do them which should be regarded as the essence of a civil action.") (internal citation omitted).

While plaintiffs do allege specific acts of excessive force, there are no allegations regarding a meeting of the minds and it requires speculation to infer such based on the limited to non-existent evidence of participation by most of the defendants in the alleged excessive force.  The purpose of adding this claim appears to be an attempt to salvage claims against many of the defendants

in response to the blizzard of summary judgment motions.    The motion is granted for the reasons stated below with respect to the briefed motions for summary judgment against this claim.

22.    Motion for Summary Judgement by Defendant Randy Smith (#357)

Plaintiffs only offer a concise statement of fact in response to the motion and even then only state "insufficient information to accept or deny."    Defendant Smith argues that his involvement in the search was very limited as a member of the Eugene SWAT team. Although Smith states that he entered the 464 Residence where the alleged force occurred, he states that he did not come into physical contact with any of the plaintiffs or detain anyone, and plaintiffs offer no evidence that Smith was present during alleged excessive force by others.    Accordingly, the motion for summary judgment is granted as to all claims including the tenth claim, as plaintiffs offer nothing more than vague and conclusory allegations of conspiracy in the amended complaint against defendants.    There is inadequate evidence offered to show this defendant engaged in a "meeting of the minds" sharing the common purpose of the conspiracy to engage in excessive force.    Moreover, to the extent plaintiffs meant to allege a claim for conspiracy pursuant to 42 U.S.C. § 1985(3), an essential requirement for a section 1985(3) claim is that there must be some racial or otherwise class-based "invidious discriminatory animus" for the conspiracy. Bray v.

Alexandria Women's Health Clinic, 506 U.S. 263, 268-69 (1993).
Section 1985(3) was not meant to apply to all tortious conspiracies
to deprive the rights of another. Id. Section 1985(3) does not
extend to classes beyond race unless that class can show that the
government has determined that class members "require and warrant
special federal assistance in protecting their civil rights." Orin
v. Barclay, 272 F.3d 1207, 1217 n. 4 (9th Cir. 2001). In subsequent
motions, plaintiffs argue that because of their status as members
of the Whitaker neighborhood, they may maintain a section 1985
conspiracy claim. But plaintiffs fail to explain how such
membership warrants special federal assistance.


23. Motion for Summary Judgement or Alternatively Partial Summary
Judgement by Defendant Scott Vinje (#362)

     Again plaintiffs fail to present sufficient evidence that any
violation occurred with respect to the First and Second Claims
regarding lack of probable cause to search and "judicial
deception." Plaintiffs present no evidence connecting defendant
Vinje to the alleged illegal destruction of property. As noted
above, there was probable cause to make the arrest as well. Thus,
plaintiffs' Fifth Claim cannot stand against defendant Vinje
either. However, plaintiff argues that it was Vinje who threw her
to the ground causing her to strike her head against the metal door
jamb and that it was Vinje who caused her to be cuffed with ziptie

too tightly.  Plaintiff Monroe also states that Vinje ignored her requests to put on some clothes.  Unfortunately, plaintiffs fail to direct the court to any deposition testimony regarding these assertions.  While a review of plaintiff's deposition does establish that she experienced what could be considered excessive force, the deposition does not identify Vinje.  <u>See</u> Deposition of Monroe at pp. 130-58. (attached to #244).  Nonetheless, Vinje's own declaration establishes his presence during the alleged excessive force, including some degree of participation in the fall or throwing of plaintiff Monroe to the ground.  Even though Vinje disputes plaintiffs' version of the facts, there are disputes of material fact as to whether he failed to prevent others from engaging in excessive force and that he may have himself engaged in excessive force.  The motion for summary judgment is denied as to the excessive force claim.

Plaintiffs fail to present sufficient evidence of the conspiracy to establish that Vinje engaged in a "meeting of the minds" regarding a common purpose of a conspiracy to engage in excessive force.  At a minimum, Vinje is entitled to qualified immunity as there is no case law establishing that participating in a search where excessive force may have occurred demonstrates a conspiracy.  Accordingly, the motion for summary judgment is granted as to the Tenth Claim against defendant Vinje.

Finally, defendant Vinje is entitled to summary judgment as to the state law claims under the Oregon Tort Claims Act.


24.  Motion for Summary Judgement by Defendants City of Portland, Scott Groshong, Arthur Nakamura regarding the Conspiracy Claim (#366)

Again, plaintiffs provide insufficient evidence of the alleged conspiracy to survive summary judgment.  There is no evidence of a meeting of the minds or shared common purpose, or that a section 1985 conspiracy claim is appropriate.  The motion is granted.


25.  Motion for Summary Judgement by Defendants Karol Herbert, Jeff Drullinger, Pete Deshpande, and Pam Olshanski Regarding the Conspiracy Claim (#377)

Plaintiffs provide insufficient evidence of the alleged conspiracy to survive summary judgment.  The motion is granted.


26-27.   Motion for Joinder by Defendants Randy Smith and Scott Vinje (#388) and (#389)

Defendants Randy Smith and Scott Vinje move to join in the motion to strike plaintiffs' exhibits.  The motions are granted. However, the motion to strike is denied as noted above.

28.  Motion for Sanctions by Defendants City of Eugene, City of Springfield, Lane County, Jennifer Bills, Casey Froehlich, Eric Klinko, and Dan Long (#392)

Defendants seek sanctions against plaintiffs because plaintiffs' counsel represented to the court that defense counsel conceded that there was no marijuana found in the shop vac when in reality defense counsel merely noted that the DA ordered destruction of the marijuana after declining to prosecute the case against plaintiffs.  An OSP test confirmed the presence of marijuana in the shop vac, but plaintiffs now want to conduct their own tests.  Accordingly, plaintiffs seek sanctions as well. Plaintiffs did make a false representation in the supporting documents in this case, but apparently meant to argue that the evidence no longer exists and that defendants should not be able to rely on the marijuana to argue probable cause for arrest.  The arrest was made before the tests and there was sufficient basis for probable cause to make the arrest at the time of the arrest.  While plaintiffs' counsel has taken liberties with regard to characterization of the record in this case, the court declines to order sanctions.

## 29.  Motion to Strike Affidavit of Tam Davage by Defendants Scott Vinje and Randy Smith (#418)

Defendants Vinje and Smith move to strike the affidavit of Tam Davage because it was filed after the briefing on their motions for summary judgment was complete, it is not based on personal knowledge, contains abject opinion and hyperbole, is mostly irrelevant, and contains inadmissable hearsay and legal conclusions.  While the affidavit was filed late, and does contain inadmissable statements, the motion is denied without prejudice to raise an appropriate motion in limine if necessary.  The court has not considered inadmissable evidence in determining if material facts exist.

## 30.  Motion to Strike Affidavit of Marcella Monroe by Defendants Scott Vinje and Randy Smith (#419)

Defendants Vinje and Smith move to strike the affidavit of Marcella Monroe because it was filed after the briefing on their motions for summary judgment was complete, it is not based on personal knowledge, it contains abject opinion and hyperbole, is mostly irrelevant, and contains inadmissable hearsay and legal conclusions.  While the affidavit was filed late, and does contain inadmissable statements, the motion is denied without prejudice to raise an appropriate motion in limine if necessary.  The court has

not considered inadmissable evidence in determining if material
facts exist.


31 and 32.    Motions to Strike Plaintiffs' Supplemental Affidavit
of Ernest Warren, Jr. and Master of Exhibits in Support of
Plaintiffs' Responses by Defendants Scott Vinje and Randy Smith
(#420 and #421)

These motions are denied for the same reasons as noted above
with respect to motion #19.


33, 34, 35, 36, 37, 38, 39.    Motions to Join Motions to Strike (#s
422, 423, 424, 425, 430, 431, 432) by defendants Herbert,
Drullinger, Deshpande, Olshanski, City of Eugene, City of
Springfield, Lane County, Bills, Froehlich, Eric Klinko, Dan Long,
Kevin McCormick, Lee Thoming, Thomas Turner, Jerry Webber, Brian
Humphreys, Richard Lewis, and Clifton Harrold

The motions to join are granted, but the motions to strike the
affidavits of Monroe, Davage, Warren, and exhibits are denied for
the reasons noted above without prejudice to file an appropriate
motion in limine if necessary.

<u>CONCLUSION</u>

For the reasons stated above, the pending motions are granted and denied as follows:

<u>1.    Motion for Summary Judgment (#89)</u> (**Richard Lewis**)

-Granted as to state law claims
-Granted as to the unlawful search claims (First and Second Claims)
-Granted as to excessive force claim (Third Claim)
-Denied as to unnecessary destruction excessive force claim (Fourth Claim)
-Granted as to unreasonable seizure claim (Fifth Claim)

<u>2.    Motion for Summary Judgment (#106)</u> (**Jennifer Bills**)

-Granted as to all claims

<u>3.    Motion for Summary Judgment (#141)</u> (**Eric Klinko**)

-Granted as to state law claims
-Granted a to the unlawful search claims (First and Second Claims)
-Denied as to excessive force claim (Third Claim)
-Granted as to unnecessary destruction excessive force claim (Fourth Claim)
-Granted as to unreasonable seizure claim (Fifth Claim)

<u>4.    Motion for Summary Judgment (#146)</u> (**Brian Humphreys**)

-Granted as to all claims

<u>5.    Motion for Summary Judgment (#154)</u> (**City of Springfield**)

-Granted as to all claims

<u>6.    Motion for Summary Judgment (#159)</u> (**Dan Long**)

-Granted as to all claims

7.   Motion for Summary Judgment (#165) (**Casey Froehlich**)

-Granted as to all claims


8.   Motion for Summary Judgment (#170) (**Lee Thoming**)

-Granted as to all claims


9.   Motion for Summary Judgment (#174) (**Kevin McCormick**)

-Granted as to state law claims
-Granted as to the unlawful search claims (First and Second Claims)
-Denied  as to excessive force claim (Third Claim)
-Granted as to unnecessary destruction excessive force claim (Fourth Claim)
-Granted as to unreasonable seizure claim (Fifth Claim)


10.  Motion for Summary Judgment (#178) (**Thomas Turner**)

-Granted as to all claims


11.  Motion for Summary Judgment (#189) (**Jerry Webber**)

-Granted as to state law claims
-Granted as to the unlawful search claims (First and Second Claims)
-Denied  as to excessive force claim (Third Claim)
-Granted as to unnecessary destruction excessive force claim (Fourth Claim)
-Granted as to unreasonable seizure claim (Fifth Claim)


12.  Motion for Summary Judgment (#196) (**Lane County**)

-Denied as to state law claims
-Granted as to the unlawful search claims (First and Second Claims)
-Granted  as to excessive force claim (Third Claim)
-Granted as to unnecessary destruction excessive force claim (Fourth Claim)
-Granted as to unreasonable seizure claim (Fifth Claim)

13. <u>Motion for Summary Judgment (#202)</u> (**Karol Herbert, Jeff Drullinger, Pete Deshpande, Steve Swenson, Pam Olshanski, Scott Dillon, and Rene Tobler**)

-Denied as moot with respect to Swenson, Dillon and Tobler
-Granted as to Olshanski, Herbert, Drullinger, and Deshpande on the unlawful search claims (First and Second Claims)
-Granted as to Olshanski on the excessive force claim (Third Claim)
-Denied as to Deshpande, Herbert and Drullinger on the excessive force claim (third Claim)
-Granted as to Olshanski, Herbert, Drullinger, and Deshpande on the unnecessary destruction excessive force claim (Fourth Claim)
-Granted as to Olshanski, Herbert, Drullinger, and Deshpande on the unreasonable seizure claim (Fifth Claim)
-Granted as to Olshanski, Herbert, Drullinger, and Deshpande on the state law claims


14. <u>Motion for Summary Judgment (#215)</u> (**Clifton Harrold)**

-Granted as to state law claims
-Granted as to the unlawful search claims (First and Second Claims)
-Denied  as to excessive force claim (Third Claim)
-Granted as to unnecessary destruction excessive force claim (Fourth Claim)
-Granted as to unreasonable seizure claim (Fifth Claim)


15. <u>Motion for Summary Judgment (# 220)</u> (**City of Eugene**)

-Granted as to the unlawful search claims (First and Second Claims)
-Granted  as to excessive force claim (Third Claim)
-Granted as to unnecessary destruction excessive force claim (Fourth Claim)
-Granted as to unreasonable seizure claim (Fifth Claim)
-Denied as to State Law Claims


16. <u>Motion to Dismiss (#224)</u> (**City of Eugene**)

-Denied as moot with respect to the federal claims and otherwise denied with respect to the state law claims.

17.  Motion for Summary Judgement (#225) (**City of Portland, Scott Groshong, Arthur Nakamura**).

-Granted for all as to state law claims
-Granted for all as to the unlawful search claims (First and Second Claims)
-Denied as to excessive force claim (Third Claim) for Nakamura and Groshong
-Granted as to excessive force claim for the City of Portland
-Granted for all as to unnecessary destruction excessive force claim (Fourth Claim)
-Granted for all as to unreasonable seizure claim (Fifth Claim)


18.  Motion to Compel and Unseal (#237) by Plaintiffs

-Denied


19.  Motion to Strike Plaintiff's Exhibits (#306) **by defendants Drullinger, Herbert, Deshpande, Swenson, Olshanski, Dillon, Tobler**

-Denied


20.  Motion to Strike Plaintiff's Exhibits (#350) by **Eugene, Springfield, and Lane County Defendants**

-Denied

21.  Motion for Summary Judgment on Plaintiffs' Tenth Claim (#356) by Defendants **City of Eugene, City of Springfield, Lane County, Jennifer Bills, Casey Froehlich, Eric Klinko, Lee Thoming, Thomas Turner, Jerry Webber, Brian Humphreys, Richard Lewis, and Clifton Harrold**

-Granted

22.  Motion for Summary Judgment (#357) by **Randy Smith**

-Granted as to all claims

23.  Motion for Summary Judgement or Partial Summary Judgment (#362) by **Scott Vinje**

-Granted as to the unlawful search claims (First and Second Claims)
-Denied  as to excessive force claim (Third Claim)
-Granted as to unnecessary destruction excessive force claim (Fourth Claim)
-Granted as to unreasonable seizure claim (Fifth Claim)
-Granted as to state law claims
-Granted as to conspiracy claim (Tenth Claim)


24.  Motion for Summary Judgement on Plaintiffs' Tenth Claim (#366) by Defendants **City of Portland, Scott Groshong, Arthur Nakamura**)

-Granted


25.  Motion for Summary Judgment on Plaintiffs' Tenth Claim (#377) by Defendants **Karol Herbert, Jeff Drullinger, Pete Deshpande, and Pam Olshanski**

-Granted


26 and 27.   Motions for Joinder (#388) (#389) by Defendants **Randy Smith and Scott Vinje**

-Granted


28.  Motion for Sanctions (#392) by Defendants **City of Eugene, City of Springfield, Lane County, Jennifer Bills, Casey Froehlich, Eric Klinko, and Dan Long**

-Denied


29.  Motion to Strike Affidavit of Tam Davage (#418) by defendants **Scott Vinje** and **Randy Smith**

-Denied

30. Motion to Strike Affidavit of Marcella Monroe (#419) by defendants **Scott Vinje** and **Randy Smith**

-Denied


31 and 32.    Motion to Strike Supplement Affidavit of Ernest Warren and Master of Exhibits in Support of Plaintiffs' Response (#420 and #421) by defendants **Scott Vinje** and **Randy Smith**

- Denied

33, 34, 35, 36, 37, 38, 39.    Motions to Join Motions to Strike (#s 422, 423, 424, 425, 430, 431, 432 by defendants **Herbert, Drullinger, Deshpande, and Olshanski, City of Eugene, City of Springfield, Lane County, Bills, Froehlich, Klinko, Long, McCormick, Thoming, Turner, Webber, Humphreys, Lewis, and Harrold**

-Granted


　　　　DATED this ___6th___ day of July, 2007.


　　　　　　　　　　　　　　_____s/ Michael R. Hogan_____
　　　　　　　　　　　　　　United States District Judge